Patricia A. **SPELLMAN and Semmes,
Bowen & Semmes, Appellants,**

v.

**AMERICAN SECURITY BANK,
N.A., Appellee.**

Nos. 89–578, 89–655.

District of Columbia Court of Appeals.

Argued May 1, 1990.
Decided July 13, 1990.

Richard T. Sampson, with whom David F. Albright, Baltimore, Md., and Steven R. Becker, Washington, D.C., were on the brief, for appellants.

Douglas B. Mishkin, with whom Pamela Sherman, Washington, D.C., was on the brief, for appellee.

Before BELSON, TERRY and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Appellants seek reversal of an order awarding attorney's fees against them to compensate appellee for the reasonable expenses incurred in filing a motion to compel appellant Spellman to comply with a post-judgment deposition subpoena. *See* Super. Ct.Civ.R. 37(a)(4) (1989). Appellants contend that the subpoena, issued with leave of court under Super.Ct.Civ.R. 69–I (attachment after judgment), was a court order within the meaning of Super.Ct.Civ.R. 37(b), and that as non-parties in the underlying action they could not be the subject of an award of attorney's fees as a sanction under Rule 37(b)(2), but were subject only to an order of contempt under Rule 37(b)(1). Appellants further contend that

even if the trial court had authority to award fees against them under Rule 37(a)(4), they were substantially justified in opposing the motion to compel, and that a fee award was therefore inappropriate. We hold that, in the circumstances of this case, the court had authority to award fees against appellants under Rule 37(a)(4). We remand, however, for further findings by the court on the question whether appellants were substantially justified in opposing the motion to compel post-judgment discovery.

## I.

Appellee, American Security Bank (the Bank), brought a successful action on certain promissory notes against Jerry Spellman, then sought to depose his estranged wife, Patricia Spellman, in an attempt to execute on that judgment.[1] The Bank had been awarded approximately $500,000, and suspected that Mr. Spellman was making fraudulent transfers to his wife. Since Mrs. Spellman was not a party to the underlying action, the Bank sought and, on March 18, 1988, received permission of the court for issuance of a subpoena requiring her to appear at a deposition and to produce certain documents. Super.Ct.Civ.R. 69–I(a).[2] The deposition was originally set for April 14, 1988, but at the request of Mrs. Spellman's counsel, was postponed until April 26.

On the day of the scheduled deposition, Mrs. Spellman's attorneys informed the Bank that, for medical reasons, she would not submit to an oral examination but would be willing to cooperate through alternative means of discovery. They provided the Bank with a note from her physician, Dr. Kenneth W. Berger, stating that she was being treated for high blood pressure and that, in his opinion, she should not be subjected to the stress of a deposition. They also cited a previous protective order in the case issued under similar circumstances which had prevented the Bank from deposing Mrs. Spellman.[3] The Bank, however, refused to drop its demand that Mrs. Spellman appear at a deposition and, after deposing Dr. Berger, remained unpersuaded that a deposition would be damaging to her health.[4] The Bank therefore sought and, on September 8, 1988, obtained an order requiring Mrs. Spellman to submit to a physical examination by a physician chosen by the Bank. Mrs. Spellman's attorneys moved to vacate this order and for reconsideration of the March 18, 1988 order permitting issuance of the subpoena. They argued first that the September 8 order was void on the ground that the court lacked authority under Super.Ct.Civ.R. 35 to order the physical examination of a non-

---

**1.** This case has been before the court twice before. The first time we reversed the trial court's grant of summary judgment in favor of the Bank and remanded for further proceedings. *Spellman v. American Security Bank,* 504 A.2d 1119 (D.C.1986). The trial court then granted summary judgment on different grounds, and we affirmed in a Memorandum Opinion and Judgment on December 8, 1987.

**2.** Rule 69–I(a) provides:

All discovery procedures authorized by Rules 26–37 are available to the judgment creditor in the manner prescribed by those Rules, except that a subpoena ad testificandum addressed to a person other than the judgment debtor ... *shall issue only upon order of the Court.* [Emphasis added.]

The Bank filed an application for a subpoena on March 15, 1988, giving notice to both Mrs. Spellman and her attorneys, Semmes, Bowen & Semmes, that it intended to present the application "in courtroom 9 on Friday, March 18, 1988 at or about 1:30 p.m., or as early as the court

will hear this matter." The unopposed application was approved by Judge Beaudin.

**3.** In 1984, after the initial judgment in its favor, the Bank had sought to depose Mrs. Spellman as part of its post-judgment discovery. Dr. Berger signed a medical certificate advising against the deposition. Taking the certificate at face value, Judge Kollar-Kotelly ordered that interrogatories be propounded as a compromise but provided that in the event the results were unsatisfactory, the Bank could return to court.

**4.** Dr. Berger testified in the deposition that he had been treating Mrs. Spellman since 1974, that she suffered from "standard, common, garden variety" hypertension which had been controlled by medication, and that her health was generally good. He also stated, however, that the stress associated with impending depositions in 1984 and 1988 had resulted in her blood pressure being "grossly elevated from the prior readings," and expressed the opinion that the deposition could be harmful to her health.

party, and second, that the March 18 order requiring her to submit to a deposition contradicted the 1984 protective order without overruling it, and therefore was void as well. This motion was denied on October 14, 1988.

On November 22, 1988, Mrs. Spellman submitted to a physical examination by Dr. Carl Wipplinger. His report concluded that while Mrs. Spellman did suffer from mild arterial hypertension,

> [t]here is no evidence of target organ damage from hypertension and her only risk factor is a family history of hypertension and diabetes. There is no medical reason to believe that Mrs. Spellman's condition would be unduly jeopardized by giving a deposition. [Because of l]ability of her blood pressure responses as evident on this examination, the deposition should not take place in a threatening or stressful environment and she should arrange with her physician to have her blood pressure followed closely.

On the basis of this report, the Bank refused to withdraw its demand that Mrs. Spellman submit to a deposition, but offered to accommodate her by taking her deposition at her home. Still relying on Dr. Berger's opinion and the prior protective order, however, Mrs. Spellman refused to appear.[5] She also refused to provide the documents requested unless the Bank agreed to an alternative form of discovery.[6]

On January 17, 1989, the Bank filed a motion under Super.Ct.Civ.R. 37 to compel Mrs. Spellman to appear in response to the deposition subpoena. The motion was set for a hearing on April 12, 1989, and both sides were ordered to produce their medical witnesses. At the conclusion of the hearing, Judge Graae granted the bank's motion to compel Mrs. Spellman's appearance at a deposition and allowed the Bank to file a motion for attorney's fees and costs. Mrs. Spellman was deposed without incident on May 1, 1989. On May 11, pursuant to Super.Ct.Civ.R. 37(a)(4), Judge Graae granted the Bank's motion for attorney's fees and costs in the amount of $9,911.66 against Mrs. Spellman and her attorneys jointly and severally.

## II.

Citing *Floyd v. Leftwich*, 456 A.2d 1241 (D.C.1983), appellants contend that Judge Beaudin's March 18 order permitting the issuance of a subpoena to Mrs. Spellman constituted "an order to provide or permit discovery" under Rule 37(b)(2) and that, under *Floyd*, the only sanction available against a non-party for non-compliance with that order was contempt of court. Thus, they argue, Judge Graae had no authority to award attorney's fees against Mrs. Spellman and her attorneys under Rule 37(a)(4).[7] To the contrary, we view

---

5. On January 9, 1989, Mrs. Spellman's attorneys arranged for her to be examined by a third physician, Dr. William J. Mroczek of the Cardiovascular Center of Northern Virginia. He concluded that

> Mrs. Spellman should avoid any circumstances involving high stress levels. For her continued health and well being, I have recommended to her that she should specifically avoid any in-court or out-of-court situations which cause her anxiety. This recommendation is based upon my findings documenting hypertensive cardiovascular disease and specifically and remarkably high blood pressure readings which were obtained only under the conditions of the stress of an office examination.

Dr. Mroczek did not testify at the subsequent hearing before Judge Graae on the motion to compel.

6. On December 13, 1988, counsel for the Bank sent a letter to Mrs. Spellman's attorneys stating in part:

> Although the bank will not agree at this time to accept interrogatory answers instead of deposition testimony, there does seem to be one matter on which Mrs. Spellman and the Bank agree. Whether we proceed by deposition or interrogatories, Mrs. Spellman must produce documents. I suggest that Mrs. Spellman produce all of the documents identified in her subpoena immediately. Upon review of those documents, the Bank *may*—and I emphasize *may*—be prepared to revisit your request to proceed first by interrogatories. [Emphasis in original.]

Mrs. Spellman did not respond to this suggestion.

7. Under Rule 37(a)(2), if a deponent fails to provide requested discovery, "the discovering party may move for an order compelling [compliance] ... in accordance with the request." Rule 37(a)(4) in turn provides:

> If the motion is granted, the Court shall, after opportunity for hearing, require the party or

*Floyd* as distinguishable and hold that the court possessed authority under Rule 37(a)(4) to award fees against appellants.

In *Floyd*, a party to an underlying divorce action, Mrs. Leftwich, and her neighbor, Mr. Floyd, were served with subpoenas requiring their testimony at a deposition.[8] 456 A.2d at 1243. The trial court denied a motion to quash the subpoenas and ordered the depositions taken. Mr. Floyd appeared on the required date but refused to be sworn. The husband then filed a motion to compel discovery and for sanctions, and the trial court granted the motion and awarded attorney's fees and costs against Mrs. Leftwich and Floyd jointly and severally. *Id.* On appeal, Floyd argued, *inter alia*, that the trial court lacked authority to impose sanctions under Rule 37(b), claiming that the order requiring the parties to submit to a deposition "was not an order compelling discovery pursuant to Super.Ct.Civ.R. 37(a), and therefore, Rule 37(b) sanctions could not be imposed." *Id.* at 1245. He further argued that even if such authority existed, Rule 37(b)(2) did not allow an award of attorney's fees and costs against a non-party. *Id.*

This court held that the trial court's deposition order was an "order to provide or permit discovery" for violation of which sanctions could be imposed under Rule 37(b). *Id.* This was so even though the order was not pursuant to a motion to compel discovery. The court observed, however, that "Rule 37(b)(2) directs that

reasonable expenses including attorney's fees be imposed against 'the *party* failing to obey the order or the attorney advising him or both' [emphasis in *Floyd* ]," and that Floyd was not a party to the underlying action. *Id.*

> Thus, as a nonparty, appellant Floyd can be ordered either to be sworn or to answer questions pursuant to a Rule 37(a) motion to compel discovery, or he can be held in contempt, pursuant to Super.Ct. Civ.R. 37(b)(1), for his violation of [the trial court's] order by his refusal to be sworn or to answer questions. Rule 37(b)(1) provides for the only sanction which is available against a nonparty, contempt.

*Id.* (footnote omitted). We therefore reversed the award of attorney's fees against Floyd.

■ Appellants argue that since Super. Ct.Civ.R. 69–I(a) requires a court order before a post-judgment subpoena to testify can issue to anyone other than the judgment debtor, Mrs. Spellman's failure to appear was a violation of an order providing or permitting discovery, sanctionable—according to *Floyd*—only under Rule 37(b)(1). In *Floyd*, however, before a motion to compel was filed, the trial court had denied Mrs. Leftwich's motion to quash the subpoenas and expressly ordered the depositions to be taken. Floyd was then sanctioned for failing to comply with that order. In the present case, by contrast, the Rule 69–I(a) order merely authorized the clerk of the Superior Court to issue the subpoena in question. As the comment to Rule 69–II

---

deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the Court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

Rule 37(b) provides, in relevant part:
(1) Sanctions by court in district where deposition is taken. If a deponent fails to be sworn or to answer a question after being directed to do so ... the failure may be considered a contempt of that court.
(2) Sanctions by this Court. If a *party* ... fails to obey an order to provide or permit discovery, ... the Court may make such orders in regard to the failure as are just....

> In lieu of any [such] orders or in addition thereto, the Court shall require the *party* failing to obey the order or the attorney advising him or both to pay reasonable expenses, including attorney's fees, caused by the failure.... [Emphasis added.]

It is undisputed that Rule 37(b)(2) does not apply to nonparties such as Mrs. Spellman.

**8.** The trial court had previously granted Mrs. Leftwich and her husband an absolute divorce, awarded possession of the marital home to the husband, and ordered Mrs. Leftwich to vacate the premises. In vacating the marital home, Mrs. Leftwich had apparently removed all tangible property and furnishings from the home. The subpoenas were issued in connection with the removal of this property.

states, the Rule 69–I requirement of leave of court was designed "to provide a safeguard against harassment of the judgment debtor and other persons, especially the judgment debtor's employer." Thus, in seeking to depose Mrs. Spellman, the Bank was required to obtain leave of the court before a subpoena could issue. The resulting order was not directed to Mrs. Spellman, but rather to the clerk, and had no force separate from the subpoena itself; it was not tantamount to a Rule 37(b) order to provide or permit discovery, as was the order in *Floyd.* We conclude that the Bank could properly apply for an order under Rule 37(a) compelling Mrs. Spellman's appearance at a deposition, and seek attorney's fees in connection with that application.

### III.

■■■ Rule 37(a)(4) provides that if a motion to compel is granted, the trial court *shall* assess fees against the losing party or deponent (or attorney advising the conduct that necessitates the motion) "unless the court finds that the opposition to the motion was substantially justified." *See Habib v. Thurston,* 517 A.2d 1, 8 (D.C. 1985) (award of expenses mandatory absent showing of substantial justification). In *Habib,* we held that a person is substantially justified in opposing the motion if issues are raised "about which reasonable persons could genuinely differ on whether a party was bound to comply with a discovery rule." *Id.* at 9 (quoting *Smith v. Montgomery County,* 573 F.Supp. 604, 614 (D.Md.1983) (fee award inappropriate where significant privacy grounds justified opposition)); C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2288, at 790 (1970). *See also Reygo Pacific Corp. v. Johnston Pump Co.,* 680 F.2d 647, 649 (9th Cir.1982) (losing party substantially justified if reasonable persons could differ as to appropriateness of opposition).[9] As we noted in *Habib, supra,* the Advisory Com-

mittee Note to the 1970 amendment of Fed. R.Civ.P. 37(a)(4) provides that

[o]n many occasions ... the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court.

517 A.2d at 9.

■■■ Under the circumstances of this case, we would have some difficulty in concluding that Mrs. Spellman and her attorneys were not substantially justified in opposing the motion to compel compliance with the subpoena. Dr. Berger, Mrs. Spellman's treating physician for approximately fifteen years, expressed the opinion that she should avoid the stress associated with a deposition, citing her "grossly elevated" blood pressure at the time of previous impending depositions. Several years earlier, his similar opinion had persuaded the trial court to issue a protective order requiring interrogatories at least initially as an alternative to a deposition. *See* note 3, *supra.* Hence it is at least questionable whether the attorneys representing Mrs. Spellman could be faulted for heeding the continued concern of her physician and refusing voluntarily to present her for deposition. Were these facts all the record contained, the actions of Mrs. Spellman and her attorneys would not fairly support a finding of no substantial justification.

Judge Graae, however, in his April 12, 1988 ruling granting the Bank's motion to compel compliance with the deposition subpoena, expressed the belief that appellants could possibly have avoided the need for a deposition had they provided the Bank with certain documents which had also been the subject of a subpoena.[10] In other words, the judge may have concluded that appellants' refusal to furnish the documents— and provide discovery generally—stemmed in part from motives less laudable than a concern to protect Mrs. Spellman's health.

**9.** *See also Quaker Chair Corp. v. Litton Business Systems, Inc.,* 71 F.R.D. 527, 535 (S.D.N.Y.1976) (presence of genuine dispute indicates losing party was substantially justified); *Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem,* 54 F.R.D. 551, 553–54 (S.D.N.Y. 1972) (fee award unwarranted where losing par-

ty acted justifiably and issues presented were not frivolous).

**10.** The following exchange took place between the court and Mr. Becker, Mrs. Spellman's attorney:

**156**

We are unable to discern the judge's reasoning with confidence, however, because he made no findings in later granting the request for attorney's fees. Although we are mindful of the workload of the trial courts, the closeness of the fee issue here dictates that we have the benefit of the judge's express findings in light of the applicable standard. Accordingly, we will remand the case for further findings on the question of whether appellants were substantially justified in opposing the motion to compel.[11]

*So ordered.*

MR. BECKER: [W]e went through this before in '85 where the Court said propound interrogatories and if there are any problems, come on back. There were no problems. I don't understand why [the Bank] is now saying suddenly *we need a deposition three years later* and—

THE COURT: Well, apparently one of the reasons is that you haven't provided them with certain documents.

MR. BECKER: He just subpoenaed those documents. We haven't provided them to him simply because it hasn't been determined whether she is going to attend a deposition. I'm not going to withhold discovery, your Honor.

THE COURT: That doesn't make any sense.

MR. BECKER: Your Honor, we will provide them with those documents. I'll state that on the record right now.

THE COURT: It doesn't make any sense based on the representations that I've heard which is that perhaps the necessity for the deposition could have been obviated by providing the documents.

\*    \*    \*    \*    \*    \*

MR. BECKER: The letter that [the Bank] is referring to is essentially an attempt to take a bite of the apple and then eat the whole thing.

He said first we'll take the documents, then we'll consider about first proceeding by interrogatories. And he said first at that point the negotiations were over. It was obvious. He said okay, we'll take the documents, we'll do the interrogatories, and then we'll go with the deposition again. He gave us no assurances whatsoever that he was willing to conciliate and perhaps accept the interrogatories.

\*    \*    \*    \*    \*    \*

THE COURT: Your argument would have more force if an effort had been made to respond to the discovery request.

Following this exchange, the court, relying on the medical testimony, ruled that Mrs. Spellman was able to appear at a deposition.

11. We reject appellants' argument that the trial court lacked authority to order Mrs. Spellman, as a non-party, to submit to a physical examination concerning her ability to be deposed, so that the attorney's fees decision must be made without regard to appellee's effort in having sought a court order for an examination or to Dr. Wipplinger's opinion as to Mrs. Spellman's ability to testify. The allegation in this case was that Mr. Spellman was making fraudulent transfers to his wife. The court therefore had clear authority to permit her to be deposed, *Alpern v. Frishman,* 465 A.2d 828, 829 (D.C.1983), and when she resisted on asserted medical grounds, the court likewise had authority, in these narrow circumstances, to order a neutral medical appraisal of her condition including an examination. A contrary rule would have required the court, irresponsibly, either to accept her claim of physical incapacity at face value or to reject it out of hand.

